THE PEOPLE *v.* GUZMAN ET AL.

APPEAL from the District Court of Guayama.

No. 49.—Decided November 20, 1905.

APPEAL—EXCEPTIONS.—The Supreme Court will not consider on appeal alleged errors which do not affect the substantial rights of the accused.
ID.—PUNISHMENT IMPOSED UPON THE ACCUSED.—In the absence of a showing of an abuse of discretion, the Supreme Court will not modify on appeal the punishment imposed upon the accused by the trial court in the exercise of its discretionary powers within the limits established by law.

The facts are stated in the opinion.

*Mr. Rossy, fiscal,* for respondent.

The appellant did not appear.

MR. JUSTICE HERNANDEZ delivered the opinion of the court.

This is an appeal taken by Jose Guzman and Aureliano Ortiz from a judgment of the District Court of Guayama by which they were sentenced, on April 1st, last, after a jury trial and conviction, of the crime of murder in the second degree, to life and fifteen years' imprisonment, respectively, in the departmental penitentiary of this Island, at hard labor.

The information was drawn in the following terms:

"In the name and by the authority of The People of Porto Rico. United States of America, *ss:* The President of the United States. In the District Court for the Judicial District of Guayama, February 7, 1905. *The People of Porto Rico* v. *Jose Guzman, Aureliano Ortiz, Monserrate Cintron.* Jose Guzman, Aureliano Ortiz, *alias* Toto, and Monserrate Cintron, *alias* Moncho, are accused by information filed by the *fiscal,* of the crime of murder in the first degree, comprised in section 201 of the Penal Code in force, committed as follows: In Salinas, *barrio* Lapas, of this judicial district, December 25, 1904, the defendants Jose Guzman, Aureliano Ortiz and Monserrate Cintron, with malice and premeditation, deliberately lay in wait for and attacked Juan Amoros, robbed him of the money he had with him, the amount of which it has not been possible to determine, and fractured his temporal, parietal, and occipital bones, from which injuries and fractures he died the next day. This act is contrary to the law in

such case made and provided, and against the peace and dignity of The People of Porto Rico.—Ramon Nadal, *fiscal* of the district.

"The above information is based upon the sworn testimony of witnesses examined before me, and I solemnly believe that there is just cause for the filing of this information. Ramon Nadal, *fiscal* of the district.

"Sworn to and signed before me, this 8th day of March, 1905.— Francisco Morales, secretary of the District Court of Guayama."

The defendants pleaded not guilty, and after Monserrate Cintron had been discharged under the provisions of section 239 of the Code of Criminal Procedure, the evidence and the arguments of the parties were heard, and the court charged the jury upon the matters of law applicable to the case; whereupon the jury returned a verdict of guilty of murder in the second degree against Guzman and Ortiz, who were sentenced as above stated.

During the trial, counsel for the accused, Guzman and Ortiz, noted a number of exceptions, which were embodied in the corresponding bill, settled by the judge, and which read as follows:

"District Court of Guayama. *The People of Porto Rico* v. *Jose Guzman, Aureliano Ortiz, Monserrate Cintron.* Murder in the first degree. Be it known: That at the sessions of the Guayama court held on March 28 and 29, 1905, at the trial of the above defendants, counsel for the defendants took the following exceptions:

"1. The *fiscal* asked Genaro Dones whether he remembered having found a small package of money on Maricolla, the mistress of the deceased Amoros. Counsel for Jose Guzman objected to this question. The court overruled his objection. Counsel excepted to the ruling of the court.

"2. Counsel for Guzman asked witness, Genaro Dones, whether it was true or not that when he was testifying before the *fiscal* the first time he related to him the facts of his meeting with Juan Amoros, the deceased, the words they exchanged, and the other statements just made by the *fiscal*. The *fiscal* objected to the question. The court sustained the objection of the *fiscal*. The defense took exception.

"3. Counsel for Jose Guzman asked the witness Genaro Dones when it was that he testified before the *fiscal* and related to him the

acts as he was then relating them in court. The *fiscal* objected to the question. The court sustained the objection. The defense took exception to the ruling of the court.

"4. Counsel for Guzman asked the witness Dones what that was that Amoros, the deceased, had said about 'two on horseback,' 'weight, weight,' when was it that he said it, and was it when Maricolla was coming. The *fiscal* objected to the question. The court sustained the objection on the ground that it had already been answered by the witness. The defense took an exception to the ruling of the court.

"5. *Motion.*—The *fiscal*, basing his motion on section 239 of the Code of Criminal Procedure, prayed the court to discharge the defendant, Monserrate Cintron, so that he might become a witness for The People of Porto Rico. Counsel for Jose Guzman prayed the court for permission to make his legal arguments upon the petition of the *fiscal* to the court. The court denied the petition of counsel for the defense, and ordered that the defendant in this case, Monserrate Cintron, be discharged in order that he might serve as a witness. The defense took an axception to the action of the court.

"6. The *fiscal* put the following question to witness Antonio Santiago: 'The day that you heard that Juan Amoros had been injured, do you remember having seen Jose Guzman or Aureliano Ortiz on that day?' Counsel for Guzman objected to the question. The court allowed it. Counsel took exception.

"7. Counsel for Aureliano Ortiz asked witness Desiderio Aponte if, when the woman brought him the message sent him by the mistress of Juan Amoros that the latter had been beaten, everybody in the house had heard what she said. The *fiscal* objected to the question. The court sustained the objection, saying that the witness could testify as to the whereabouts of all the persons when she was speaking, but the question in the form in which it was put required an expression of an opinion on the part of the witness. Counsel for the defense took an exception to the ruling of the court.

"8. Counsel for Aureliano Ortiz asked the same witness about the woman who brought the news of the misfortune to Juan Amoros. The question was, 'What did the woman say?' The *fiscal* objected to the question. The court sustained the objection to the question in the form it was put, ruling that she could state that she had given notice of this or that occurrence, but that her words were not necessary. The defense took an exception.

"9. Counsel for Jose Guzman asked witness Luis Ortiz whether

while he was in jail they went to take his deposition, or whether he sent for the *fiscal.* The court declared the question irrelevant. The defense took exception to the ruling of the court.

"10. The *fiscal* asked witness Bautista Ortiz whether she remembered having been in the house of Juan Amoros on the night of the occurrence, to which the witness answered that she had been there with her sister. The *fiscal* asked her what she had learned there. Counsel for Aureliano Ortiz objected to the question. The court held it to be relevant. The defense took an exception.

"11. Witness Monserrate Cintron stated to the court that between seven and eight he and the defendants were with Juan Amoros, the deceased, and that Amoros asked Pepe Guzman when he was going to pay him that little account, and that then Pepe (the defendant Guzman) told him ——— counsel for Guzman objecting to the witness stating what Guzman had said. The court admitted the statement. Counsel for the defense took an exception.

"12. Counsel for Jose Guzman asked witness Monserrate Cintron, the defendant discharged by the court, what effect the information had had on him when the *fiscal* had read it to him. The court ruled out the question as irrelevant. The defense took an exception to the ruling of the court.

"And for delivery to the court for its approval we sign this bill, at Guayama, April 19, 1905.—Respectfully, C. Dominguez y Rubio, counsel for Jose Guzman and Aureliano Ortiz.

"I, Charles E. Foote, judge of the District Court of Guayama, Certify: That the questions, rulings, and exceptions taken and embodied in this bill of exceptions are those which were actually put, made, and excepted to, and I therefore approve this bill of exceptions.—Charles E. Foote."

The appellants have not appeared in this Supreme Court to sustain their exceptions, and it is to be noted that when they took the appeal they did so on the mere ground that they considered the sentences imposed to be excessive.

Upon an examination of these exceptions, we find that they in nowise affect the substantial rights of the defendants. and, therefore, in accordance with the provisions of section 362 of the Code of Criminal Procedure we should not consider them.

Furthermore, the sentences which the appellants consider

excessive have been imposed by the judge in the exercise of his discretional power within the limit established by the law, and it has not been shown that he has abused such power.

We are of opinion, therefore, that the trial court has conformed to the law in the hearing and determination of the cause and, consequently, the judgment appealed from should be affirmed, with the costs of the appeal against the appellants.

*Affirmed.*

Chief Justice Quiñones, and Justices Figueras, MacLeary and Wolf concurred.